## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Selvin Adonay E.M., | No. 25-cv-3975 (SRN/DTS) |
| Petitioner, | |
| v. | |
| Kristi Noem, *Secretary of the United States Department of Homeland Security*; Pamela Bondi, *Attorney General of the United States*; Peter Berg, *Field Office Director of Enforcement and Removal Operations, Saint Paul Field Office*; and Joel Brott, *Sherburne County Sheriff, Warden of Sherburne County Jail*, | **MEMORANDUM OPINION AND ORDER** |
| Respondents. | |

Pamela Guerrero, Esq., 316 E. Main St., Anoka, MN 55303, for Petitioner

Ana Voss and Lucas B. Draisey, U.S. Attorney's Office, 300 S. 4th St., Minneapolis, MN 55415, for Respondents

SUSAN RICHARD NELSON, United States District Judge

Before the Court is the Petition for a Writ of Habeas Corpus ("Petition") [Doc. No. 1] filed by Petitioner Selvin Adonay E.M.  He seeks immediate release from detention or, in the alternative, an opportunity for a bond hearing pursuant to 8 U.S.C. § 1226(a).  The Government opposes the Petition.

Based on the parties' agreement that a hearing on the Petition would be unnecessary because the facts of the case are unlikely to be disputed, the Court has taken the Petition under advisement on the papers. For the reasons set forth below, the Petition is granted.

## I.    BACKGROUND

In his Petition, Petitioner challenges DHS's recent policy of subjecting all noncitizens who enter the United States without inspection to mandatory detention during the pendency of their immigration removal proceedings—including those who have lived in the United States for months or years.

### A. Immigration Proceedings

Petitioner is a citizen of Honduras. (Pet. ¶ 15.) He has resided in the United States since September 2015 and lives in St. Paul, Minnesota. (*Id.* ¶ 40.)

In December 2018, ICE originally detained him on domestic assault charges, noted that he was "an alien present in the United States who ha[d] not been admitted or paroled," and placed him in removal proceedings in Immigration Court. (*Id.* ¶ 41; Pet'r's Ex. B (Notice to Appear ("NTA")).)

Petitioner alleges that he was afraid to return to Honduras, and consequently, he submitted Form I-589, an Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture in February 2019. (Pet. ¶ 42.) In April 2019, an immigration judge released him on bond. (*Id.*; Pet'r's Ex. D (Immigr. Bond); Lee Decl. [Doc. No. 10], Ex. C (Immigr. Ct. Bond Release Order).)

In April 2022, Petitioner requested administrative closure of his removal proceedings. (Pet'r's Ex. F (Immigr. Ct. Order of Admin. Closure).) The Immigration

Court granted Petitioner's unopposed motion and administratively closed his case based on his pending application for a nonimmigrant "U Visa.". (*Id.*; Pet. ¶¶ 43–44; *see also* Lee Decl. ¶¶ 9–10 & Ex. D (Immigr. Ct. Order of Admin. Closure).)

On October 12, 2024 Petitioner was granted deferred action status, which lowered his priority for removal and made him eligible for a work permit, which he applied for and received. (Pet. ¶ 43 & Ex. H (Pet'r's Emp. Auth. Card).)

Pursuant to a new policy announced on July 8, 2025, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," DHS/ICE now considers all persons who entered the United States without inspection "applicants for admission" under 8 U.S.C. § 1225(a), and therefore argues that they are subject to mandatory detention under § 1225(b)(2)(A).

On October 6, 2025, law enforcement officers arrested Petitioner for driving without a valid license or insurance, and detained him in the Washington County Jail. (Lee Decl. ¶ 11; Pet. ¶ 45.) ICE officials lodged an immigration detainer against Petitioner (Lee Decl. ¶ 12, Ex. E (Immigr. Detainer)), arrested him, (Lee Decl. ¶ 13; Pet. ¶ 45), and moved to re-calendar his immigration proceedings. (Lee Decl. ¶ 14, Ex. F (Gov't Mot. to Recalendar).) Petitioner is now in ICE custody at the Sherburne County Jail. (Lee Decl. ¶ 15.) ICE decided to continue Petitioner's detention without an opportunity for a bond hearing, to post bond, or be released on other conditions. (Pet. ¶ 47.)

### B.  Proceedings in this Court

On October 16, 2025, Petitioner filed his Petition, alleging that he is being detained in violation of the Immigration & Nationality Act ("INA"), as well as the INA's

implementing regulations found at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19, and the Fifth Amendment to the U.S. Constitution.  He contends that he is entitled to a bond hearing under 8 U.S.C. § 1226, at which an immigration judge can assess whether he poses a flight risk or a danger to the community.  (Pet. ¶¶ 46–53.)  However, pursuant to the recent decision of the Bureau of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), Petitioner asserts that an immigration judge is no longer able to consider bond requests.  (Pet. ¶ 48.)  As a result, Petitioner asserts that he faces the prospect of prolonged immigration custody in violation of the INA, its implementing regulations, and his right to due process.  (*Id*.)

Respondents disagree.  They argue that Petitioner falls under the provisions of 8 U.S.C. § 1225, not § 1226, and is not entitled to a bond hearing under the INA.  (Resp'ts' Opp'n [Doc. No. 9] at 8–21.)  Respondents also contend that Petitioner's due process claim fails, as well as his claim that Respondents have violated the INA's implementing regulations.  (*Id.* at 21.)

## II.    DISCUSSION

### A.  Subject Matter Jurisdiction

Before turning to the merits of the Petition, the Court finds that it has jurisdiction to consider it.  A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 305–07 (2001).  To a limited extent, some statutory provisions constrain judicial review of immigration matters, such as 8 U.S.C. § 1252(g), which bars district courts from hearing challenges to the

method by which the Secretary of Homeland Security chooses to commence removal proceedings. *See Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–85 (1999) (noting there was "good reason" for Congress to proscribe judicial review of the Attorney General's "discrete acts of 'commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders,'" as they constituted "the initiation or prosecution of various stages in the deportation process.").

Petitioner is not challenging the implementation of 8 U.S.C. § 1225, nor is he seeking review of any discretionary decision of the Secretary of Homeland Security or the Attorney General, nor is he seeking this Court's review of a final order of removal, as he is not subject to one. Rather, he argues that Respondents lack authority to detain him under § 1225(b)(2) because it does not apply to a noncitizen in his circumstances. He contends that § 1226(a) confers the applicable statutory authority for his detention. Under the circumstances presented in the instant Petition, the Court is satisfied that it possesses jurisdiction to consider Petitioner's claims, and Respondents present no argument to the contrary.[1]

---

[1] Although Respondents do not challenge the Petition for failure to exhaust remedies within Immigration Court, the Court finds that exhaustion would be futile in light of *Hurtado*. *See Ortiz v. Freden*, --- F. Supp. 3d ---, No. 25-CV-960-LJV, 2025 WL 3085032, at *5 (W.D.N.Y. Nov. 4. 2025) (finding exhaustion of remedies would be futile, even if petitioner had not exhausted his remedies). Immigration judges would be obliged to follow *Hurtado*'s ruling on the scope of § 1225(b)(2)(A).

## B. Statutory Framework Under the INA (Count I)

Fundamental to the resolution of this matter is whether Petitioner falls under 8 U.S.C. § 1225 or § 1226 of the INA. The critical distinction between these provisions is that "noncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 1193850, at *4 (W.D. Wash. Apr. 24, 2025). Respondents maintain that Petitioner falls within the mandatory detention provisions of § 1225(b), while Petitioner argues that he is subject to § 1226.

### 1. Detention Under 8 U.S.C. § 1225

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. It provides that a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." *Id.* § 1225(a). Such applicants "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies to arriving aliens and certain other aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Such aliens are generally subject to expedited removal proceedings "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* §

1225(b)(1)(A)(i).  Aliens claiming asylum or fear of persecution are "detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).  Aliens who make no such claims, or are "found not to have such a fear," are detained until removed.  *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

Respondents contend that Petitioner is subject to detention under § 1225(b)(2), which has been described as "broader" than § 1225(b)(1).  *Jennings*, 583 U.S. at 287.  Section 1225(b)(2) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).   Section 1225(b)(2) thus requires that an "examining immigration officer" determine that the alien is:  (1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted.  *See Martinez v. Hyde*, --- F. Supp. 3d ---, No. 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025), *appeal filed*, No. 25-1902 (1st Cir. Sept. 29, 2025)).  Respondents argue that, apart from those aliens who fall under § 1225(b)(1), essentially all arriving aliens and all aliens in the United States fall under § 1225(b)(2), which subjects them to mandatory detention.  (Resp'ts' Opp'n at 6–20.)  In other words, under Respondents' view, detention is categorical in the case of nearly every alien entering this country, whether they are newly arrived at the border or have been living in this country for several years or decades.

## 2.  Detention Under 8 U.S.C. § 1226

Section 1226 is titled "Apprehension and detention of aliens."  8 U.S.C. § 1226.  In contrast with § 1225(b), § 1226 sets forth a discretionary process for the apprehension and detention of aliens who are already present in the United States and eligible for removal, setting forth the "default rule" that "[t]he Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 583 U.S. at 288 (quoting § 1226(a)).  Moreover, except as provided in § 1226(c), "the Attorney General 'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Id*. (quoting § 1226(a)).  The exception under § 1226(c) is for a category of noncitizens subject to mandatory detention—noncitizens who have committed certain "enumerated . . . criminal offenses [or] terrorist activities." *Id*. at 289.  Persons who are subject to mandatory detention include certain categories of "inadmissible" noncitizens.  § 1226(c)(1)(A), (D), (E).

In January 2025, the Laken Riley Act added one such category subject to mandatory detention.   Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025); 8 U.S.C. § 1226(c)(1)(E).  The Laken Riley Act amendments mandate detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (the inadmissibility ground for a noncitizen "present in the United States without being admitted or paroled"), 1182(a)(6)(C) (the inadmissibility ground for misrepresentation), or 1182(a)(7) (the inadmissibility ground for lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. *Id*.

### 3.  Whether § 1225(b) or § 1226(a) Applies Here

#### a.  Plain Meaning of Statutory Text

Turning to the statutory text, Respondents argue that § 1225 treats noncitizens "present" without admission—just like those who are "arriving"—as applicants for admission. (Resp'ts' Opp'n at 10–14.)  Thus, they argue, noncitizens already "present in" the country are "deemed . . . applicant[s] for admission." (*Id.* at 11) (citing 8 U.S.C. § 1225(a)(1)).  They point to the choice of the word "deemed," in support of their position that a person present without admission may not literally be present at the border applying for admission, but should be treated as such. (*Id.*)

Respondents further highlight the use of the phrase "seeking admission" in § 1225(b)(2)(A), contending that noncitizens "seeking admission" and an "applicant for admission" are overlapping phrases. (*Id.*)  They note the definition of the word "apply" means "to request or *seek* assistance, employment, or a*dmission*." (*Id.*) (citing *Apply*, The Am. Heritage Dict. (5th ed. 2022)).  Respondents contend that in ordinary language, an "applicant for admission" is also "seeking admission," and the second phrase is not a narrower subset of the first. (*Id.*)  Thus, they assert that "admission" is "a *status*, which a person present without admission lacks but is deemed to be applying for, even after crossing the border." (*Id.* at 13.)

In addition, Respondents argue that Congress structured § 1225(b) to distinguish "arriving" noncitizens from "other" applicants for admission—those present in the United States without admission. (*Id.* at 16.)  They urge the Court to apply the reasoning of the BIA in *Hurtado,* and of the district court in *Vargas Lopez v. Trump*, No. 8:25CV526, 2025

WL 2780351, at *9–10 (D. Neb. Sept. 30, 2025), in which the court found that the petitioner was not precluded from being an "applicant for admission" under § 1225(b)(2) even though he had been in the United States for several years.

The Court respectfully disagrees with Respondents' interpretation of §§ 1225 and 1226.  As other courts have observed, the use of the verb "seeking" in § 1225(b)(2)(A) "denotes an active and present effort," such that "'an alien seeking admission' is a noncitizen who, at the time of his arrest, is actively and presently pursuing inspection and authorization by an immigration officer to lawfully enter the United States." *Valverde v. Olson*, No. 25-CV-1502, 2025 WL 3022700, at *3–4 (E.D. Wisc. Oct. 29, 2025).  Because Petitioner, like the petitioner in *Valverde*, was not an "alien seeking admission" at the time of his arrest, he is not subject to the mandatory detention provision of § 1225(b)(2)(A).  *Id.* at *4; *see also Ortiz v. Freden*, --- F. Supp. 3d ---, No. 25-CV-960-LJV, 2025 WL 3085032, at *5 (W.D.N.Y. Nov. 4. 2025) (noting that "seeking" necessarily implies present-tense action, such that "seeking admission" means actively trying to acquire "lawful entry . . . after inspection and authorization by an immigration officers.").  "Seek" is an active verb, "not a type of status" that "narrows the meaning of alien to one who is attempting to obtain lawful admission to the United States." *J.A.M. v. Streeval*, No. 4:25-cv-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov. 1, 2025).

Moreover, a "cardinal principle of statutory construction" is that a statute should be construed so that "if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted).  In the context of § 1225, other courts have observed that if all "'applicant[s] for admission'

are also 'seeking admission,' then the words 'seeking admission' would be surplusage." *Ortiz*, 2025 WL 3085032, at *7 (citing *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2809996, at *7 (D. Mass. Oct. 3, 2025); *Jimenez v. FCI Berlin, Warden*, --- F. Supp. 3d ---, 2025 WL 2639390, at *8 (D.N.H. Sept. 8, 2025); *Romero v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025); *Martinez*, 2025 WL 2084238, at *4. The Court agrees. Because Petitioner was not attempting to be lawfully admitted at the time of his arrest, under a plain reading of the statute, he does not qualify as an "alien seeking admission" who is subject to mandatory detention under § 1225(b)(2)(A).

Respondents also argue that text from elsewhere in the INA shows that Congress assumed *all* applicants for admission would be subject to mandatory detention. (Resp'ts' Opp'n at 13–14) (citing 8 U.S.C. § 1182(d)). They cite § 1182(d)(5)(A), which authorizes the government to temporarily waive grounds of inadmissibility for certain noncitizens without differentiating between those arriving and those already present. (*Id.*) However, Respondents fail to consider more pertinent language found in § 1225(b)(2) itself. For example, subparagraph (B) states that § 1225(b)(2)(A) "shall not apply to an alien . . . who is a crewman" or "stowaway," and subparagraph (C) states that "[i]n the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(B), (C). As noted in *Ortiz*, "The fact that these carve-outs involve

various means of arriving in the United States suggests 'that the category of applicants for admission covered by [section] 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering[.]"  2025 WL 3085032, at *8 (citing *Hyppolite*, 2025 WL 2829511, at *9).

### b.  Relationship Between §§ 1225 and 1226

Applying Respondents' interpretation of § 1225 would render § 1226 superfluous. Section 1226 generally leaves detention to the discretion of an immigration judge, except for the detention of criminal noncitizens under § 1226(c).  "[O]ne of the most basic interpretive canons" is that "a statute should be construed so that effect is given to all its provisions," and "no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up); *see also Haroun v. U.S. Dep't of Homeland Sec.*, 929 F.3d 1007, 1010 (8th Cir. 2019) ("When interpreting a statute, courts typically do not presume that Congress has used superfluous words in its enactments." (citation omitted)).  If an interpretation of one statutory provision "would render another provision superfluous," courts presume that interpretation is wrong. *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010).  This presumption "applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Id.* at 608. And it is "strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013).  Relatedly, courts "presume differences in language . . . convey differences in meaning." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017).  And courts "do not lightly" find

that Congress adopted "two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

Here, the presumption against superfluity is at its strongest because the Court is interpreting two parts of the same statutory scheme, and Congress even amended the statutory scheme this year when it passed the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), adding Subsection (c)(1)(E) to § 1226. The Laken Riley Act carved out an additional category of noncitizens from the discretionary detention scheme under § 1226(a), for whom mandatory detention now applies under § 1226(c). Respondents' novel interpretation of § 1225(b)(2) runs headlong into that new addition. If § 1225(b)(2) already mandated detention of *any* alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless. The Court will not find that Congress passed the Laken Riley Act to "perform the same work" that was already covered by § 1225(b)(2).

### c. Prior Agency Statutory Interpretation and Practice

In addition, the Court's construction of the two statutes is consistent with the longstanding reading of the statutes by DHS and ICE—at least until quite recently. "[T]he longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up). Historically, noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed "arriving aliens" under § 1225(b), but were instead subject to § 1226(a). *See Jennings*, 583 U.S. at 287 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking*

admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the* country pending the outcome of removal proceedings under §§ 1226(a) and (c).") (emphasis added); *Rodriguez*, 2025 WL 1193850, at *15 (noting ICE's "longstanding agency practice [of] applying Section 1226(a) to inadmissible noncitizens already residing in the country."). Noncitizens already residing in the county, such as Petitioner, were placed in standard removal proceedings and received bond hearings, unless their criminal histories rendered them ineligible under § 1226(c). *See Jennings*, 583 U.S. at 288.

> Addressing the recent change in DHS/ICE policy, one court observed,
>
> Under the administrations of five presidents—including this one in 2016-2020—section 1225 applied to noncitizens at or near the border or those who were still seeking admission under the legal fiction of parole; section 1226, on the other hand, applied to those noncitizens found in the United States without legal status and therefore subject to removal. And nothing has changed—factually or legally—to warrant that ipse dixit change in interpretation, which "would require the detention of millions of immigrants currently residing in the United States."

*Ortiz*, 2025 WL 3085032, at *10 (internal citations omitted).

The Court acknowledges *Hurtado*, in which the BIA concluded that § 1225(b)(2) applied to noncitizens classified as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General"—the same provision under which Petitioner is charged. 29 I. & N. Dec. at 217, 225. But the Court is not bound by the BIA's interpretation and *Hurtado* departs from years of consistent statutory interpretation. *See Loper-Bright*, 603 U.S. at 412–13. This

Court has previously found, along with the vast majority of district courts throughout the country, that the applicable detention scheme for noncitizens already residing in the country is under § 1226(a), absent any exceptions under § 1226(c). *See, e.g., Maldonado v. Olson*, --- F. Supp. 3d ---, No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, at *11–13 (D. Minn. Aug. 15. 2025); *Reyes v. Raycraft*, No. 25-12546, 2025 WL 2609425, at *6–7 (E. D. Mich. Sept. 9, 2024) (collecting cases).

### d. Record Evidence

Furthermore, the record evidence supports the conclusion that § 1226 applies.  In *Maldonado*, this Court found that § 1226 governed, noting that DHS's Notice to Appear stated the petitioner was a noncitizen who was present in the United States without being admitted or paroled.  2025 WL 2374411, at *11.  Likewise, here, Petitioner's Notice to Appear contains a checked box for "You are an alien present in the United States who has not been admitted or paroled," but not for the box marked "You are an arriving alien." (Pet'r's Ex. B (NTA); Lee Decl., Ex. B (NTA).)  Indeed, in 2018, the Immigration Court treated Petitioner's detention under § 1226 and released him on bond.  (Pet'rs' Ex. D (Immigr. Bond); Lee Decl., Exs. C (Immigr. Ct. Bond Release Order) & D (Immigr. Ct. Order of Admin. Closure).)  Petitioner is not a noncitizen "seeking admission" or an "arriving alien."  (*See* Pet'rs' Ex. B (NTA).)  He has been present in the United States since 2015.  (Pet. ¶ 40.)  He is not subject to § 1225(b)(2)(A)'s mandatory detention provision.

The Court therefore finds that based on statutory construction and this record, § 1226 applies to Petitioner.[2]

## C. Legislative History

The legislative history of the IIRIRA also reflects the historical treatment of noncitizens residing in the United States, who had previously entered without inspection. *See Rodriguez*, 2025 WL 1193850, at *15. They were generally subject to deportation hearings and discretionary release on bond. *Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020) (noting that prior to passage of the IIRIRA, a deportation hearing was the typical procedure for an alien already physically present, but not lawfully present, in the country, while an exclusion hearing was the typical procedure for an alien outside the United States, seeking admission (citing *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) (en banc))). Section 1226(a)'s predecessor statute, § 1252(a), included discretionary release on bond. *See* 8 U.S.C. § 1252(a) (1994). When passing the IIRIRA, Congress observed that the new § 1226(a) "restates" the Attorney General's authority to arrest, detain, and release on bond, as previously provided in § 1252(a). *Rodriguez*, 2025 WL 1193850, at *15 (citing H.R. Rep. No. 104-469, pt. 1, at 229; H.R. Rep. No. 104-828, at 210). "Because noncitizens like [Petitioner] were entitled to discretionary detention under Section 1226(a)'s predecessor statute and Congress declared its scope unchanged by IIRIRA, this background supports [Petitioner's] position that he too is subject to discretionary detention." *Id.*

---

[2] Respondents do not argue that one of the exceptions under § 1226(c) applies to Petitioner.

Respondents state that before IIRIRA's passage, "the INA assessed status on the basis of 'entry' as opposed to 'admission.'"  (Resp'ts' Opp'n at 14) (citing *Martinez v. Attorney Gen. of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012)).  Under this "entry doctrine," noncitizens who crossed the border illegally and successfully eluded apprehension and inspection purportedly received "greater procedural and substantive rights" in deportation proceedings than non-citizens who presented themselves for inspection at ports of entry and who were "subjected to more summary exclusion proceedings."  *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010).  Respondents assert that the IIRIRA sought to rectify this imbalance by replacing the concept of "entry" with "admission," and by ensuring that all immigrants who have not been lawfully admitted "are placed on equal footing in removal proceedings."  (Resp'ts' Opp'n at 15) (citing *Torres*, 976 F.3d at 928).  Respondents thus argue that "[a]ny interpretation of § 1225(b) that focuses on whether a person has entered or not would undo what Congress did in IIRIRA."  (*Id.*)  Respondents cite *Chavez v. Noem*, No. 3:25-CV-02325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025), in which the court referenced this aspect of legislative intent in finding that the government's interpretation of § 1225 "comports with Congress'[s] addition of § 1225(a)(1) by IIRIRA in 1996."

However, numerous district courts have rejected this argument, finding the government "err[s] in its analysis by identifying *one* of Congress's concerns in enacting IIRIRA and then treating it as Congress's sole concern driving the statute."  *Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *11 (N.D. Cal. Sept. 12, 2025); *see also Rodriguez*, 2025 WL 2782499, at *24; *Romero*, 2025 WL 2403827, at *12; *Hernandez*

*v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643, at *7 (D. Colo. Oct. 24, 2025).

Notably, this particular expression of legislative intent does not address mandatory

detention, which is directly at issue here. *Rodriguez*, 2025 WL 2403827, at *24 ("But

creating a level playing field in removal proceedings 'says nothing about detention pending

the outcome of those proceedings.'") (quoting *Romero*, 2025 WL 2403827, at *12).

> As the Court in *Rodriguez* explained,
>
> Nor can Defendants enlarge Congress's stated concern that noncitizens living
> in the United States had an advantage during removal proceedings pre-
> IIRIRA to an unarticulated aim to mandate detention for all such noncitizens
> post-IIRIRA. It is easy to conceive of reasons Congress would distinguish
> between these concepts; for one, noncitizens who have lived for years in this
> country are more likely to be working in critical industries, parenting U.S.
> citizen children, or otherwise serving their communities. The mass detention
> of these individuals—without regard to flight risk or danger to the public—
> is far more disruptive to local American economies, families, and
> communities than the detention of noncitizens who have just crossed the
> border. And as discussed above, to the extent legislative history is a guide,
> Congress declared its intention that noncitizens taken into custody while
> residing in the United States retain the ability to secure release on bond.

*Id*.

The Court agrees with other courts that have found that if Congress had intended

for the IIRIRA to "requir[e] the detention of millions of people currently living and

working in the United States[,] then it would have said so more clearly." *Id.*; *see also*

*Romero*, 2025 WL 2403827, at *12 ("Indeed, . . . it is reasonable to assume that Congress

would have made it plain if it had intended such a major shift," and "if Congress's intention

was so clear, why did it take thirty years to notice?") (cleaned up).

Accordingly, the Court declines to adopt Respondents' position, based on their

statutory construction and narrow view of legislative intent, that § 1225(b) applies to all

noncitizens present in the United States without admission. Respondents' interpretation contradicts the plain meaning of § 1225(b)(2)(A), disregards the relationship between §§ 1225 and 1226, would render the amendment to § 1226(c) under the Laken Riley Act superfluous, and is inconsistent with many years of prior statutory interpretation and practice. Petitioner is therefore not subject to mandatory detention, and is entitled to a bond hearing under § 1226.

Because the Court finds that Petitioner is entitled to relief on his claim under the INA (Count I), it declines to consider his related claim of a violation of the bond regulations (Count II).

### D. Due Process (Count III)

Additionally, the Court finds that Petitioner's continued detention under § 1225(b)(2)(A) violates his procedural due process rights. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, the right to due process "affords no protection against the deprivation of liberty interests that are not constitutionally cognizable." *Sanchez-Velasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010). To determine whether civil detention violates a detainee's Fifth Amendment due process rights, courts apply the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 903.

Respondents address Petitioner's due process claim only in passing, stating that "an immigration detainee has no constitutional right to release on bond when held pursuant to a statutory provision requiring mandatory detention during removal proceedings." (Resp'ts' Opp'n at 21.)  Respondents rely on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), but  the Court finds *Banyee* inapposite.  In that case, the Eighth Circuit addressed a constitutional challenge to mandatory detention under § 1226(c) for the length of the detainee's removal proceedings.  *Id.* at 930.  Unlike Petitioner, Mr. Banyee's lengthy criminal history placed him in custody under § 1226(c).  *Id.*

Here, the first *Mathews* factor—the private interest affected by official action— favors Petitioner.  "The interest in being free from physical detention" is "the most elemental of liberty interests."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004). Petitioner has a significant private interest in being free from physical detention. Furthermore, he contends that he could better prepare for his immigration case if he were released on bond.  (Pet'r's Reply [Doc. No. 11] at 14.)

Moreover, when assessing the private interest, courts consider the detainee's conditions of confinement, namely, "whether a detainee is held in conditions indistinguishable from criminal incarceration." *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (noting noncitizen detainee held "alongside criminal inmates" at county jail); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (same)).  Petitioner is being detained at

the Sherburne County Jail, where pretrial criminal detainees and convicted criminals are also held.

The second *Mathews* factor—the risk of erroneous deprivation—requires the Court to consider the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation. 424 U.S. at 335. This factor favors Petitioner, as he is presently and erroneously detained under the mandatory detention provisions of § 1225, with no opportunity for a bond hearing. Granting Petitioner a bond hearing under § 1226(a) provides a due process safeguard that will reduce the risk of erroneous deprivation without imposing significant burdens on the Government. Respondents do not identify any burdens, nor do they suggest that Petitioner would be denied bond if he were afforded a hearing. *See Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025) (noting a "large" risk of erroneous deprivation where respondents failed to show that petitioner presented any risk of flight or risk to public safety). As noted earlier, in 2019, an immigration judge previously determined that Petitioner posed no risk of flight or to public safety, and granted his release on bond. (Pet'r's Ex. D (Immigr. Bond); Lee Decl., Ex. C (Immigr. Ct. Bond Release Order).)

Finally, the third *Mathews* factor—the government interest—requires the Court to weigh the private interests at stake and the risk of erroneous deprivation of those interests against Respondents' interests in persisting with mandatory detention and the burdens of additional or substitute requirements. 424 U.S. at 335. As in *Günaydin*, 784 F. Supp. 3d at 1189, and *Maldonado*, 2025 WL 2374411, at *15, the Court recognizes that ensuring

21

that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest. A bond hearing will permit the Immigration Court to consider those interests while also safeguarding Petitioner's significant private interests in personal liberty and due process.

In sum, the Court finds that all three *Mathews* factors support Petitioner's claim that his due process rights are currently being violated, absent the opportunity for a bond hearing.

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Petitioner Selvin Adonay E.M.'s Petition for a Writ of Habeas Corpus [Doc. No. 1] is **GRANTED**, as follows:

   a. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a).

   b. Within seven (7) days of the date of this Order, Respondents shall provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) at which the parties will be allowed to present evidence and argument regarding whether Petitioner is a danger to the community and presents a flight risk if not detained.

   c. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention.

   d. Within ten (10) days of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation.

2. Respondents are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota before the ordered bond hearing.  If the immigration judge determines that the Petitioner is subject to detention under 8 U.S.C. § 1226(a), Respondents may request permission from the Court to move Petitioner if unforeseen or emergency circumstances arise that require Petitioner to be removed from the District.  Any such request must include an explanation for the request as well as a proposed destination.  The Court will then determine whether to grant the request and permit transfer of Petitioner.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: November 12, 2025                     s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge